## HENRY FLAACKE

### *v.*

## THE MAYOR AND ALDERMEN OF JERSEY CITY and others.

1. One who seeks to have a deed reformed on the ground of mistake, must be able not only to show that a mistake has been made, but also what it is, and must establish it to the satisfaction of the court.

2. Where deeds were so drawn as to include a part of a street, reformation sought on allegations of a prior verbal agreement that the grantor should be paid for the lands within the lines of the street,

refused on the ground that the proof of such agreement was not satisfactory ; and injunction to restrain a municipal corporation from using such deeds as evidence of dedication, denied.

3. If such verbal agreement should be established, it would not affect a subsequent *bona fide* purchaser for value, without notice.

———

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. J. S. Taylor* and *Mr. S. B. Ransom*, for complainant.

*Mr. W. P. Douglass* and *Mr. Leon Abbett*, for Jersey City.

*Mr. S. C. Mount*, for himself and B. Church.

*Mr. John Linn*, for the other defendants.

THE CHANCELLOR.

The bill is filed to reform certain deeds, given by the complainant to Benjamin C. Welsh, John S. Sutphen, John C. Appleby, August Will, Adam R. Welsh and John Foster Welsh, respectively, in May, 1870, for certain small parcels of land in what is now Jersey City (then Bergen), and which, in the deeds therefor by him to them, were described as lying between the rear of their respective lots, fronting on Welsh street, and the northerly line of Franklin street or Harrison avenue, as extended westerly from Bergen avenue, and as being bounded "southerly, by the northerly line of said extension of Franklin street or Harrison avenue." When these deeds were executed and delivered, Harrison avenue had not yet been opened, but it was laid down on the official map of the commissioners appointed to lay out streets, appointed under a provision in that behalf in the charter of the city of Bergen, and so much of it as was in front of the lots so conveyed was owned by the complainant. He also owned the land on the southerly side of the avenue. The avenue has been opened since that time, by the board of public works of Jersey City, and, in the

assessment of damages, the complainant was awarded the sum of $10 for the damages for the half of the avenue adjacent to or in front of the lots so conveyed by him. That the award was merely nominal was due to the fact that the board of public works found that, by the deeds, he had dedicated the land in respect of which it was made to public use. He now seeks by this suit to reform the deeds in such manner as to exclude the presumption of dedication, which arises from the fact that the land is bounded in the deeds upon the avenue. *Clark* v. *City of Elizabeth*, 8 *Vr.* 120. The deeds were executed in pursuance of a written agreement, made on the 24th of November, 1869, between the complainant, of the one part, and John S. Sutphen, Benjamin F. Welsh, August Will, Adam R. Welsh, Joseph Wood, Abner B. Welsh, John F. Welsh and Sarah J. Welsh, of the other part, by which he agreed with them that he would convey to them, by separate deeds of conveyance to each, so much of his land as lay between the then rear lines of the separate pieces or plots of land owned by each of them and "the northerly line of the proposed extension of Communipaw road or Franklin street." By the contract he also agreed with John S. Sutphen to convey to John C. Appleby so much of his (the complainant's) land as lay between the rear line of Appleby's land and the northerly line of the proposed extension of Franklin street.

The complainant, being dissatisfied with the assessment of damages, brought, under the provisions of the charter of Jersey City (*P. L.* 1871, p. 1117, § 44) an action of assumpsit against the city in the premises, which resulted in a special verdict in his favor, by which the jury found that he did not intend by the deeds to dedicate to public use the land adjacent thereto within the lines of the avenue, and assessed the value thereof. No judgment has been entered on that verdict. The complainant seeks, by his bill, to restrain the corporation of Jersey City from setting up or using the deeds in that action as evidence of dedication.

Benjamin F. Welsh took the conveyance of the land which, by the contract, the complainant agreed to convey to Joseph W. Wood and Abner B. Welsh, respectively. Before the commencement of this suit he sold and conveyed the Wood property, with the piece adjoining on the avenue, conveyed to him by the complainant, to Andrew B. Church. Before the filing of the bill, Sutphen conveyed to Mrs. Appleby, wife of John C. Appleby, the land on Welsh street owned by him at the time of the conveyance by the complainant to him, together with the land adjacent on the avenue conveyed by the complainant to him. Sarah F. Welsh, before the beginning of this suit, conveyed her land on Welsh street, with the piece conveyed to her by the complainant, to Samuel C. Mount. The agreement for conveyance was made under the following circumstances : The commissioners being about to lay out Harrison avenue, the complainant urged, for reasons connected with the advantage of his own property, that it be located in the place in which it now is. This location would leave in the rear of the land on Welsh street, which was the next parallel street, a strip of his land. The commissioners were unwilling so to locate the street, unless he would agree to sell that strip to the owners of the property on Welsh street on terms satisfactory to them. The result was the contract before mentioned.

Benjamin F. Welsh and John S. Sutphen appear to have taken the most prominent part in the conversation which preceded and resulted in the agreement. Others of the owners of the property on Welsh street were present. Appleby was absent, but was represented by Sutphen. Sarah F. Welsh and John F. Welsh appear not to have been present. The defendants, Benjamin F. Welsh, John S. Sutphen, Jacob C. Appleby and wife, August Will, Adam R. Welsh, John F. Welsh, Sarah J. Welsh, Samuel C. Mount and Andrew B. Church, all, by their answers, expressly deny the right of the complainant to the relief which he seeks. Those of them to whom he conveyed deny

Flaacke *v.* The Mayor and Aldermen of Jersey City.

that the agreement was as alleged by the complainant. They say that they understood, and still understand, that he, by the sale of the strip of land, intended fully to dedicate to public use the land in front of it lying within the lines of Harrison avenue as extended, and that the agreement was prepared after full discussion of the whole matter, and embraced the full and entire conclusion of the parties thereto with reference to the sale of the strip, and that they have no knowledge of the omission of any part of the contract or agreement between the parties to the written contract. The others deny that they had notice of the alleged omission when they took the deeds.

The complainant testifies that it was expressly agreed, orally, between him and the owners of the land on Welsh street, before the written agreement was drawn, that he was to have compensation for his land within the lines of the avenue whenever it should be taken for public use as a street.

The commissioners, Mr. Culver and Mr. Brinkerhoff, also testify to the same understanding, and so, too, does Mr. Harrison, who was then mayor of Bergen. The commissioners and the mayor speak of what transpired at the place of meeting of the commissioners, when the arrangement by which the complainant agreed to sell the strip to the owners of the land on Welsh street was made. Benjamin F. Welsh and John S. Sutphen, who, as before remarked, appear to have taken the greatest part in the negotiation in behalf of those owners, both explicitly deny that there was any agreement that the complainant should have pay for the land within the lines of the street in front of the strip. The other owners who were present also deny it. The commissioners and the mayor testify rather to the " understanding " than the language or expressions of the parties, and in this respect their testimony lacks force as against the positive and explicit denials of the answers of those of the owners who were present at the making of the arrangement. One who seeks to rectify an instrument on

the ground of mistake, must be able not only to show that there has been a mistake, but exactly what it was, and to establish it to the satisfaction of the court.   If there is any reasonable doubt on the subject, the rectification will not be made, but the instrument must stand as the evidence of the intention of the parties.   The testimony of the commissioners and the mayor could not, however, affect any of the defendants except Benjamin F. Welsh and John S. Sutphen, (and Jacob C. Appleby, through the latter,) who alone are spoken of as taking part in the talk which resulted in the arrangement.   Welsh represented no one but himself, and Sutphen represented only himself and Appleby.   Sutphen has sold his land to Mrs. Appleby.   The others, August Will, Adam R. Welsh, John F. Welsh and Sarah Welsh, are not affected by the testimony.   The equitable assistance invoked by the complainant will not, of course, be granted against a *bona fide* purchaser for valuable consideration, without notice.   Such are Mrs. Appleby, Mr. Mount and Mr. Church.   If, by the deeds from the complainant, under which August Will, Adam R. Welsh, John F. Welsh, Mr. Mount and Mrs. Appleby claim, a dedication is established, the relief sought by the complainant cannot be granted. Of what avail will it be to him to rectify the deeds to Benjamin F. Welsh, if, under any of the others, the dedication is established?   For, if the dedication be established by any of the deeds, the city would not be enjoined.

The bill will be dismissed, with costs.